The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Mr. Sommer Thank you, Your Honor. Good morning. I, along with my colleague, Anatoly Smolkin, represent Kevin Quinn and Queen Anne Research and Development Corporation in this appeal. This appeal challenges a summary judgment order by the District Court that was made before any discovery in the case, as is the proper course under Rule 56D, requested discovery on the assertions in the motions for summary judgment. Judge Alito Well, let's pursue that for a moment. We're always cautious when the District Court moves quickly to take a motion to dismiss and move it into summary judgment range, but the affidavit for Rule 56 purposes is a tad sparse in terms of the necessity of discovery, and I take it only paragraph 23 really deals with that. So if you could take some time to tell us in some more detail specifically why you need these issues. Mr. Sommer Of course, Your Honor. So first of all, the standard for Rule 56D is not that the affidavit lay out the entire discovery plan of the plaintiff in the case. It doesn't require even a specific reference to Rule 56D, and it doesn't have a prescribed form. Rule 56D is intended to Judge Alito Right. But what you've got here is pretty sparse, doesn't really tell you much of anything. So why don't we get right into why you need it. Mr. Sommer Well, what it does is it identifies probably the most important discovery that's needed, which is the collection of documents and other materials from the county and other government entities about the basis for the decision of the county and the state to undertake a regulation that had a particular targeted effect on Kevin Quinn and his properties. Judge Alito All right. Why don't we just go through each one. So start with your takings claim. What in discovery is going to make a difference in terms of a ruling of matter of law on the takings claim? Mr. Sommer Well, first of all, on the takings claim, discovery will help assess what is possible with these properties before and after the merger and whether the regulation has the effect, as we have alleged, and as Quinn testified in his affidavit, that there has been a complete deprivation of all economically viable use of the property. Judge Alito Well, not to get you off track, as far as the merger ordinance is concerned, as opposed to the sewer ordinance, are we going to be able to resolve the merger question until the Supreme Court rules in Murr? Mr. Sommer You may resolve the merger question before the Murr decision because there are some distinctions between Murr and this case. Judge Alito But those distinctions don't seem to help you because you never sought any kind of compensation from the state on this kind of thing. You just move right into federal court. I know you say, oh, well, this is an applied challenge and the district court treated it as an applied challenge, but it seemed to me that your attack on the grandfather merger clause came pretty close to being a facial challenge. And I thought, well, if we invalidate the grandfather merger clause in these circumstances, I don't know what grandfather merger clauses would survive. Murr was different because it had one developed lot and one undeveloped lot, which is not the case here. But how do we invalidate this grandfather merger clause? These are very, very common across the country. They're all over the place. The courts have generally upheld them. How do we invalidate this grandfather merger clause without essentially making a facial statement that all grandfather merger clauses are invalid? Judge Alito Well, Your Honor, on this record, it is impossible to analyze the effect of this merger clause on Quinn's property. Quinn has alleged that there's been a complete deprivation of the value as a result of the merger in the sewer. Judge Graham Isn't that a compensation issue for the just compensation? Are you? Judge Alito Well, it's not merely just a just compensation issue. It's a question of whether the county can take the act in the first instance. There is no authority for the county, without providing just compensation, to impose a merger. Judge Graham Why didn't you seek? If you've had something taken from you, why didn't you use the state procedures and seek compensation?  Judge Alito Because we thought that there would be an opportunity there, through the court's prudential ripeness authority, to analyze the case as applied challenge, as we alleged in the complaint. Judge Graham This prudential ripeness bit seems to just bypass the state completely. My question gets back, you bought a number of undeveloped lots. That is an investment. It's very, very different from buying a developed lot or buying a personal residence or whatever. It's an investment decision. Wouldn't you agree with that? Judge Alito I would agree that Quinn purchased these lots as separately recorded lots for the purpose of developing each one separately. It was an investment at those separate lots. Judge Graham It was an investment decision, wasn't it? Judge Alito Yes, Your Honor. Judge Graham Okay, we agree on that. Now, we agree also on the fact that every investment decision, by its very nature, carries risk. Right? Judge Alito I agree. Judge Graham So, Mr. Quinn, when he purchased these lots, he undertook a risk the way anybody would when they make an investment decision, and this is a quintessential investment decision. Judge Graham But he didn't undertake a risk that the government would impose an unconstitutional merger ordinance that would render him unable... Why, given how common these grandfather merger clauses are across the country, they occur all the time, and it's one way in which local government tries to maintain property values and some environmental health by limiting density. And a grandfather merger clause couldn't possibly come out of the blue to a developer or an investor like Mr. Quinn because they're too common. They happen all the time. So why wouldn't a reasonable investor calculate a grandfather merger or put in a grandfather merger ordinance the possibility of the same as part of his calculus of risk? Judge Alito Well, let me just make one important distinction. You've been describing the merger clause as a grandfather merger clause. Grandfather merger clauses may be common. There are no cases where the county has pointed out these types of merger provisions have sustained constitutional challenge. But in this case, and it's also a distinction that's important for purposes of the Murr analysis, there is no grandfather provision. Mr. Quinn purchased these properties... Judge Graham But the point I'm trying to make is that local governments impose minimum lot, I mean, minimum setback distances, minimum lot sizes. They prevent lots from being built from being subdivided. They have merger ordinances. In other words, there are five or six tools that don't differ in principle. And they all have to go directed at the question of density. And they are all part of the basic tool kit that local governments use in furtherance of one of their core powers. And I can't understand why, because this is a market decision. And the government doesn't have any obligation to allow Mr. Quinn to make good on what is by its very nature a speculative investment. Judge Alito Your Honor, it's not part of the risk calculus to anticipate that the government may enact an ordinance that will deprive your property of all economically viable use. It certainly... Mr. Quinn It doesn't deprive it, because you can still sell the merged lots and you can still develop the merged lots. Judge Alito Well, that's not in the record, Your Honor. On this record, there is nothing that indicates either in the county's briefs, certainly not in Quinn's briefs, any evidence that these properties can be developed as merged, sold as merged, or retain any value as merged. This was simply a determination that Judge Russell made based on his own common sense evaluation of this. In these cases, when there is a challenge... Judge Russell Did you point out any prohibition on development? Judge Alito Yes, Your Honor. Actually, we pointed out that there is a scheme of development that's been recorded in the land records that prohibits any development of these properties except for residential use. So once you have a property... Judge Russell Did you know that going in? That this was a residential area? Judge Alito Yes. Yes, Your Honor. Judge Russell Okay. So you knew that. See, the point is that I don't know what's being taken. The sewer connection can't be taken, because it was never there in the first place. It was all under... The lots were all under a septic system. So that wasn't taken. There's no permit that's been granted you. That wasn't taken. Do you have a property right? No. You have what is a hope. You have an expectation. You have something you'd like to see. But basically from the Roth case on downward, the Supreme Court has refused to say that a proper... that a hope or an expectation confers a property right. You may have wanted a sewer connection. Fine. I don't blame you. But that's not a property right that can be the subject of a taking, is it? Judge Alito Well, the sewer connection, at least with respect to the properties that abut Route 8, which is the line on which a sewer will be laid, do have a right under state law to connect to that sewer. Judge McAuliffe That's a question of law, which the district court resolved against you. So I'm circling back to my original questions, particularly with regard to the sewer ordinance and your takings claim. What discovery do you say in that circumstance is going to make any difference? Judge Alito Well, in this circumstance, Your Honor, part of the equal protection claims, part of the due process claims... Judge McAuliffe No, no, no, no, no. I want to stick with the takings claim. Tell me what discovery you need for the takings claim with respect to the sewer ordinance. Judge Alito Well, I don't... our focus and discovery will not be on the sewer ordinance, on the takings claim. Our focus and discovery will be on the effect of the change in value pre-merger, post-merger, and pre-resolution and post-resolution. These actions that were targeted at Quinn. Now, the court should be mindful that these actions disproportionately affected Quinn, and it's important to look at the map itself. You can see how the sewer line was drawn in a way that... Judge McAuliffe Are you now making a due process argument or an equal protection argument? Judge Alito Both, Your Honor. The equal protection argument certainly, in the way that the... it goes to due process in that there is no rational basis for the way in which the sewer line was drawn. It goes to the equal protection argument... Judge McAuliffe The rational basis was that they were trying to serve the existing residential community that had the failing septic tanks, and your client's property was all undeveloped. So that's why it didn't get the sewer service. Judge Alito Well, there are undeveloped properties in the sewer area as well, and many of them, 632 of them to be exact. Judge McAuliffe So are they treated differently than your client? Judge McAuliffe Yes, they receive sewer, and our client doesn't receive sewer. Judge Braley That's because of the... Judge McAuliffe Weren't they... Judge Braley Location. Judge McAuliffe Yeah, weren't these other lots on the way or interspersed with other if I'm remembering the map, yours were all compacted together. Judge McAuliffe But that is the... that is how the county defined the carving of the service area. They created the circumstances that... Judge Braley Do you concede they're right? Do you concede that the reasons they give are accurate, true, and the decision can be based right now on what they say? Judge McAuliffe No, not entirely so, because there are properties that abut Route 8 that are undeveloped and should not be in any way distinctive from the properties that Kevin Quinn owns, yet they are slated to receive sewer service. Mr. Quinn is not. Judge Braley All right, well, to follow up on Judge Agee's question, what information is it that you seek, that you need, that you can't do without in order to succeed? Judge McAuliffe It's certainly with respect to the value of the properties. That is the key issue in the case, something that Quinn has alleged and supported by affidavit that these regulatory actions deprived Quinn of all economically viable use of the property. On a record before any discovery in the case, and I would ask the county or the state to identify a single case in which a court has allowed a decision pre-discovery like this to stand on the question of whether there's been a deprivation of value. The valuation goes to the merger ordinance. The valuation also goes to the sewer, especially with respect to the sewer line along Route 8, which connects, which should connect as a matter of state law. Judge Braley You basically said you weren't making any discovery claim with the sewer ordinance. Judge McAuliffe Well, not discovery for purposes of that, but my point is that the value, the difference in value is affected by the regulation both by the sewer along Route 8 as well as the merger. Judge Braley Why isn't that information already in your possession? What I'm, I think Judge Agee and I are interested in is what you need from the defendants. Judge McAuliffe Well. Judge Braley If you want depositions, if you want interrogatories, what is it you want from them that could make a difference in the result in this case? Judge McAuliffe We've already made an allegation that the property has lost all economic value. That's in the complaint and in Mr. Quinn's affidavit. Judge Braley That's in the allegation, but what you're seeking here is you're seeking the county's help to make good on a speculative investment. And I, you know, I don't understand the takings place cases of the Supreme Court or the Equal Protection Clause or anything else that requires a local government to give a developer who's made a speculative investment the tools that were not in existence at the time that the investment was made and that would enhance the value of an investment. That's a radical principle. Judge McAuliffe Well, as to the sewer, I hear your Honor. But as to the merger, there is just no support for the proposition that... Judge Braley I can see that there is law that supports the proposition that there is no constitutionally protected interest in expectancy of sewer. Judge McAuliffe All right. And you can see it as well that minimum lot sizes and setback distances and subdivision and things saying that lots can't be subdivided. Developers come all the time and they are resisting an ordinance that says a lot can't be subdivided because they want five houses on the lot as opposed to one or two. And that doesn't seem to me to be any kind of taking because these are so common and they are... If we rule these to be a taking, we are revolutionizing zoning law in the United States. Judge McAuliffe Well, the Supreme Court is about to take up that very issue. And Judge Agee mentioned earlier why... whether this court could make a decision about the takings issue before the Murr case has been decided. Judge Braley There was a cabin on one of the Murr lots. There was a cabin. And so you had a developed lot and then you had an undeveloped lot. And the claim in Murr was that somehow he could not sell, he could no longer sell the undeveloped lot independently or he couldn't sell the developed lot independently. But that's one developed lot and a contiguous undeveloped lot has got to be a different situation from just a whole parcel of undeveloped lots. Judge McAuliffe Analytically, the issue is the same, Your Honor. You have to look at what is the parcel that is being taken. How do you define the parcel whose value has been affected by the regulation? In Murr, the question is, do you look at the parcel that is subject to the merger, the undeveloped lot, and determine whether it has lost all economic value? Or do you look at the larger combined lot, post-merger, and determine whether together there's been a loss of economic value? Here, the same situation applies. Do you look at the individual lots, all of the individual lots that have been subjected to the merger, and as a result of their merger and the loss of the transferable development rights and the private beach access that are associated with each of those individual lots, has there been a deprivation of that individual parcel? And just let me point out another important distinction between Murr and this case. And it's one that the State of Wisconsin recognized made Murr a different case from the case before us. And that is that the parties challenging the merger in Murr acquired the property decades after the merger ordinance had been in place. In this case, Quinn acquired the properties before there was any requirement for merger. And decades later, the county imposed the merger requirement and did not grandfather Murr into that merger requirement. Murr is subject to the Yes, I understand that. But this happens. I mean, controlling the size of lots is absolutely basic to density control. It's basic to sanitation. It's basic to school overcrowding. It's basic to traffic. It's basic to environmental health. It's a situation, and it's also, I might add, as a structural and legal matter, basic to federalism, that we not strip from localities the one area, along with domestic relations. That is a matter of, for state and local governments, still, even that is coming now into federal court. But without the ability to exercise some controls over lot size, you're going to diminish quality of life in many areas. You're going to diminish property values, and you're going to raise environmental hazards. It's a hat trick. And that's all I want to say is I think this leads, I think this has all kinds of consequences, because it seems to me you want a very broad ruling. We don't want a broad ruling. We want an appropriate record on which the district court can analyze whether a taking has occurred and whether there is a Lucas claim that is viable. And we can't make that determination. The district court couldn't make that determination without a proper record before it. Thank you. Thank you, Your Honor. Mr. Fisher. May it please the court. It's my privilege to represent Queen Anne's County, Maryland, in this case. And my colleague, Nancy Young, is here on behalf of the state of Maryland. I'd like to take just a brief minute to begin by explaining the public project, the critical public project, that's involved in this case. In the 1950s, thousands of small lots were created on South Kent Island by developers by unilaterally filing subdivision plots among the land records. And this occurred before zoning and subdivision regulations had been adopted in Queen Anne's County. Homes were constructed, I think 1,518 homes were constructed on South Kent Island prior to the construction of homes being curtailed in the 1970s when the state changed the PERC regulations to require that PERC tests be conducted during the wet season. And when that occurred, it virtually stopped the issuance of further building permits on South Kent Island because the lots simply would not PERC. In recent years, the fact that the soils on South Kent Island are unsuitable for percolation systems has become apparent because 80% of the existing homes have failing septics at this point in time or at the time the project was undertaken. And that's what necessitated the with failing septic systems. And that's what precipitated the two ordinances that Your Honor, that the court has before in this case. Counsel, as I understand your opposing counsel's argument today, he seems to have more or less conceded that the sewer ordinance is not one that he can prevail on here. That's my understanding of it. And there was certainly nothing in discovery that opposing counsel identified that was essential for Rule 56 purposes to contradict the finding of the district court. So he seems to have focused most of his argument on the merger ordinance and the effect of MER. That's correct, Your Honor. We'd certainly be glad to hear from your view on that. Certainly, Your Honor. The grandfather merger ordinance was a result of the, and let me state first that the sewer service area that was approved by the state involved 632 units. And the grandfather merger ordinance was enacted for the purpose of attempting to reduce the number of lots that would be generated by the extension of public sewer so that, and the sensitive area to open up all these tiny lots to development that it would, the road system was not constructed to accommodate it, that the schools were not constructed to accommodate it. So the effect of the grandfather merger ordinance was to, because under the sewer service area terms, it served, Your Honor, lots that had failing septics plus lots that were located on a street that had a collector line constructed to serve a failing septic. So the grandfather merger ordinance, when it was applied, it was applied to reduce the number of lots. And what it did was it required the merger of a vacant lot with an adjacent vacant or improved lot in order to satisfy the 20,000 square foot minimum lot size that had been adopted in 1987. And the effect of the merger ordinance was to reduce the number of vacant lots that would become buildable through the extension of sewer. In fact, the state of Maryland refused to extend funding for the sewer extension project if the lots were not so limited. And, Your Honor, Quinn challenges the grandfather merger ordinance. He argues essentially that the existing lot lines that were created in the 1950s have talismanic quality and you have to look at them as the parcel that's analyzed. And not only that, you have to look at those separate parcels and look at and isolate only the use that could be made of them as separate parcels. And this is contrary to economics. It's unsupportable. As I understand it, the plaintiff conceded that the lots were non-developable because they could not perk, so they were wholly dependent upon sewer service. So if there's not an entitlement to the sewer service and they're not buildable because they won't perk, I'm having difficulty understanding what the merger, how the merger of the lots changes value if they're essentially vacant land and they can't be anything else but vacant land. Well, the merger of, the required merger of as many as four separately recorded lots to create 20,000 feet, it may or may not affect the value. But under the Penn Central standard and under the- Well, whether you have a 5,000 foot lot or a 20,000 foot lot, if you can't use septic and you don't have an entitlement to sewer, what difference does it make? Well, that's correct, Your Honor. We wouldn't be here if the county and state weren't spending tens and tens of millions of dollars to correct the problem and creating this value for Mr. Quinn and many others. That's correct. But what Quinn argues is that the grandfather merger ordinance constitutes a taking because he wants the court to isolate- I want to come back to Judge Agee's point, but I don't want to leave it. Certainly. As I understand it, the point that was made is the plaintiff here has conceded that there's no property right in the expectation of a sewer, so that can't be the basis of a takings claim, and if there's no entitlement to a sewer and without the sewer, you are left with lots that can't be developed either because the percolation in the soil doesn't permit any kind of septic tank system to be installed. Some of the lots did have a percolation level that would support a septic system, but others did not. But how do you deprive something of value if there's no entitlement to a sewer and the undeveloped lots can't be developed because of the unsuitability for a septic system? Right, I believe that's exactly why Quinn's challenge to the comprehensive sewer and water certainly the selection of the sewer service area was rational. I think what Quinn is arguing, Your Honor, he's saying, okay, you've decided to extend sewer, you're extending sewer, and let me make this point. This whole argument on the Grandfather Merger Clause does not have any application to his 232 block of lots, and for the reason that is that the Grandfather Merger Ordinance does not even apply until the building permit stage, and unless you're included in the sewer service area, you're not getting a building permit. So his argument in connection with the Grandfather Merger Ordinance applies only to 12 lots that he owns that happen to be in the sewer service area. And what he argues, as I understand it, he says, well, I want you to isolate and focus just on the individual 5,000 square foot lots in the development. And I want you to look at just the potential uses of that lot, that 5,000 square foot lot in isolation, and I've been deprived of all substantial beneficial use of that. Let me ask you, just to clear up something you said, there are 12 lots out of this big group of lots that will get sewer service? Yes. No, no, not in the big group. In other words, if, Your Honor, at record, at JA 38 through 40, Mr. Quinn identifies the lots that he owns. There's a big block of lots in Kentmore, 232, that are outside the sewer service area. What's the 12 lots you were talking about? They're interspersed in the other developments. They're separate, and they will get sewer service, and it is with respect to those lots. Those 12 lots really aren't part of this case? Well, I think they are, because they are the basis on which Mr. Quinn has standing to challenge the grandfather merger ordinance. And our response to that is that the... Now, is some of those 12 lots going to be merged under the ordinance? Yes, Your Honor. Okay. Those 12 will be merged into four, and then he has one other 20,000 square foot lot that's also in the service area that will not be merged. So he's going to have a total of five lots. But I think what Mr. Quinn argues, which we so adamantly disagree with, and that is that the 5,000 square foot lot is not being deprived of all substantial beneficial use or being significantly devalued for constitutional purposes by being required to merge with lots under the common ownership, which are contiguous. And the reason is that lots have value for assemblage. In fact, developers are out there purchasing property every day at greater values because they have value for assemblage. And... For assemblage. In other words, that if you've got... They have a different value when you put them together than if they were standing alone. And it may be more, and it may be less, Your Honor. A 20,000 square foot lot may be worth more or less than 4,000 or 5,000 square foot lots, but they all have important substantial beneficial value. And that's why in this case we think, given the fact that this is a facial challenge that's been brought to this ordinance, you can't contend that in all applications of this ordinance it deprives the owner of substantial beneficial use of the property. There's no ordinance that says, at least as I understand it, that says you can't sell the combined lots. Oh, absolutely not. Or merge lots. There's nothing that says you can't sell them. And there's nothing that says you can't develop them. You can't put... You can't sell them to a prospective purchaser who may want to construct a home. Oh, absolutely not, Your Honor. People are making some money off of this project. I mean, good gracious. Those 20,000 square foot lots are going to have tremendous value. In fact, they started out being completely unbuildable. The government comes in to correct a health problem, extends public sewer, and Mr. Quinn and others are going to make an enormous amount of money because they're now buildable in a waterfront community. So, I mean, to suggest that there's no market... But the basic point is a market remains. The combined lots can still be sold. Absolutely. The combined lots can still be developed for personal residence. And to the extent that they couldn't, that's not due to any kind of state action. That would be due to simply the unsuitability of the soil, wouldn't it? That's correct, Your Honor. I mean... But that's not state action. If the takings clause required that the state in some way deprive you of the beneficial value of your property. But if it's the condition of the soil that leads to a diminution of value and the fact that one lot with a percolation level higher is more valuable than another lot where the percolation level is unsuitable, that's not state action. Oh, that's correct, Your Honor. To argue that because the government is required to correct a health problem and to extend an enormous expense, public sewer, to these lots that were constructed after the 1950s and that somehow because you are not on a street with a failing septic and therefore you're not included in the service area, that that somehow constitutes a taking of your lot. I mean, just to state that argument is to refute it. But the Supreme Court has described it, and I believe this Court, as the nuisance rule. If the use of your property is a nuisance, it's not a taking when the government prevents you from having a nuisance. And here, we've got sewage bubbling to the surface. We've got contamination. We've got communicable diseases. We've got a health problem. And the reason that you can't build on a lot not in the service area is that you are a nuisance. And the fact that we have to correct some situations where there's an existing lot and you are not included in that service area because you're not on a street with a failing septic, that doesn't constitute a taking your property. And it also doesn't constitute a taking when you're required to merge because I think, Judge Wilkinson, you made a very thoughtful point that everybody who holds their property I see my time has expired. Everyone who holds their property holds it subject to the government's zoning and land use regulations. Grandfather merger clauses have been around at least since 1926. My point was that this is the quintessential investment when you purchase large numbers of undeveloped lots. That's the quintessential investment. And I don't know of any takings law that requires the government to take affirmative steps. If you had a permit that they took away, that's one thing or whatever. But I don't know of something that requires the government to take affirmative steps to make sure that your investment, which carries an element of risk, is nonetheless remunerative. I think that's exactly right. But I'll say this, an awful lot of people made an awful lot of money, including Mr. Wilkinson, to extend service. But it wasn't to make money for them. It was to correct a very serious public health problem in the best way that we could, financially and operationally. Thank you, Your Honor. I'd appreciate it if the court would affirm the district court's ruling. And with respect to the discovery issue, just very briefly, the district court in its ruling on the motion... I'm sorry. Your time is up. I apologize. And I think you've got some time. Do you want to cede the time to him? Or would you like to take it? 30 seconds. I'll concede 30 seconds. All right. The district court did a very... I'm going to stick to 30 seconds. The district court did a very thoughtful job of analyzing the discovery proposed in connection with each of the claims and concluded it was not relevant. Thank you, Your Honor. You still have your time. Come right on up. Thank you. Your Honors, I'm Nancy Young. With the Office... Could you move the microphone down a little bit? I want to make sure we hear you. With the Office of the Attorney General representing the Maryland Department of the Environment. I basically agree with the summary by Judge Wilkinson. And although this is my first appearance for the Fourth Circuit, I will yield my time unless you all have questions because I think Judge Wilkinson's summary is just right on point. You'll rest on Judge Wilkinson's argument. Yes. It may send the state a bill. All right. Thank you. Mr. Sumner, you reserve some time for rebuttal. Thank you, Your Honor. You might tell us, particularly with respect to the merger, what it is you need to discover as to valuation, which I'm assuming basically goes to these 12 lots that opposing counsel was describing. It goes more than just to the 12 lots, Your Honor. It goes to all of Quinn's property that's subject to the merger because the... that the properties still have value as individual lots, even if they are not currently eligible for a building permit. Associated with each individual lot is a transferable development right, is a right of beach access, the ability to expand the market to sell those individual lots, and the ability at some day to perhaps even build on the lot if the technology... and sever it from the lot. We may not, as the merger ordinance stands, to the extent that there is a sale of the interest in the property, we have to provide the prospective purchaser notice of the merger requirement. Without the merger ordinance, could you sell the beach access right to a third party but retain the lot? I believe there are separate strands in the bundle of rights that are associated with each individual lot. But all that information is within your possession. In other words, your opinion of value, your opinion of sellability, all that is within your control. You have experts, I presume, or your client who could testify to that. What we need to know with regard to your harm caused by lack of discovery is what they've got. It's not available to you that you need in order to make your case. Well, certainly they would have information about the value of the property as well, including their own understanding of the value of the property. And there may be some concessions there that would be helpful in establishing Quinn's claim. But we have a material dispute of fact as to value already. There's already been affidavit evidence in the record that supports the determination that the property has gone from $30,000 to $50,000 per lot to zero for those lots. And that means your problem is not with a lack of discovery. You just say summary judgment is inappropriate. Exactly. As to that particular issue, yes. But certainly an appropriately developed record will allow the parties to fully develop the existence of the value of the lot. Perhaps the county agrees. Let's say your four lots individually are worth X, but you put them together and you say now they're worth X minus one. So in terms of a Lucas claim, it still would seem to have substantial value. So I don't see how you're going to prevail there. Under the Pennsylvania Central, you seem to also have a difficult road. What is it that you say is compensable under that standard? Well, it goes to how you look at the property that is subject to the merger and whether you analyze the value of the merged parcel or you've analyzed the value of the parcel as merged. And that's the question in MER. If you're looking at the value of the parcel pre-merger and the effect on its value, I don't think it's a hard claim. It is a parcel just like in MER that is forced to be merged with others and the transferable development, the full bundle of rights that are associated with that individual parcel have been eliminated as a result of the merger. Supreme Court's going to answer that question. Or likely will answer that question very soon. I have one other question. With regard to your takings claim, are you bringing a facial challenge or an as-applied challenge? Both, Your Honor. We brought a facial challenge as well as an as-applied challenge. The district court had the ability to determine that the as-applied challenge was unripe in its discretion and dismiss the case if it chose to. It exercised its discretion to accept the case, analyzed it as an as-applied challenge, deprived the plaintiff of the appropriate record to perform an appropriate evaluation of the as-applied challenge, and then dismiss the case. Were you denied the opportunity to present your evidence? To the extent that we had, we met our pleading burden. The court did not analyze our complaint based on Rule 12b-6. It went directly to summary judgment. And we responded with a detailed affidavit that opposed the facts that were asserted in the motion for summary judgment and in the county's motion. And we requested discovery. That's the proper course. This is how civil litigation is supposed to be conducted. And I should say you're right. What I don't understand is, you know, this whole question of valuation. You just jumped immediately to a Penn Central challenge. But I don't understand why valuation, if the states are going to retain any kind of land use authority, they have a mechanism by which you can try and achieve just compensation. And you could have introduced all of your evidence on valuation before the state, in the normal course of the state process. But no, we jump immediately to federal court. And we ask the federal court to jump into something as a matter of, quote, prudential rightness, whatever the heck that is. But this whole question of valuation, to use Penn Central in this way just cuts the states out of the whole just compensation scheme. Because there's a chance, I don't know, there's a chance you could have gotten whatever value you wanted in state court. Well, Your Honor, that's what the district court had the discretion to dismiss the case and send our claims to state court and let that developed record, let the record be developed. But it chose to accept the case under the prudential rightness standard and deprive us of the discovery request. And I should also point out under the local rules of the District of Maryland, Judge Traxler, you asked whether we were deprived of our ability to present the evidence that we think was appropriate. Well, under Local Rule 104, there is no opportunity to conduct any discovery until there's been a disposition of a dispositive motion like this. So we had no ability to serve subpoenas, take a deposition, collect documents that would help us establish particularly the way in which our value was affected, but also to Judge Agee's point, how under the due process and equal protection claims, what was the rationale for targeting Quinn in the way that it did and disproportionately affecting his rights to the sewer as well as to the, under the merger ordinance? I see my time has expired. I appreciate the court's time. We'll adjourn court and come down and greet counsel. Dishonorable court stands adjourned until tomorrow morning. God save the United States and dishonorable court. Thank you.
judges: J. Harvie Wilkinson III, William B. Traxler, Jr., G. Steven Agee